**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

**UNITED STATES**                                                                                                    **PLAINTIFF**


**V.**                                          **No.  2:09-CR-20063-RTD**


**JAMES HENRY WILSON**                                                                            **DEFENDANT**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the court is the Defendant's Motion to Suppress (Doc. 30) filed June 14, 2010.

The United States of America filed a Response (Doc. 37) on June 24, 2010.  A hearing was

conducted on July 7, 2010 and the matter is now ready for Report and Recommendation.

## I.  Background

Defendant is charged in a six-count indictment alleging various sexual offenses.

Counts One through Three charge production of child pornography in violation of 18

U.S.C. § 2251. Count Four charges transportation of a person in interstate commerce

with the intent that the person engage in illegal sexual activity in violation of 18 U.S.C. §

2421. Count Five charges the defendant with using a cell phone to transfer obscene material to a

minor, and Count Six charges knowing possession of child pornography.

On September 4, 2009, a search warrant (See Government Exhibit 1) was issued for the

defendant's residence at 7609 White Oak Mountain Road in Sebastian County, Arkansas. A

search took place that same date and items of contraband were found in the residence.

The Defendant contends that the information from the complaining source was not

credible, that the information provided by the complaining source was stale and that no probable

cause existed for the issuance of the warrant.

A hearing was conducted on July 7, 2010 and the only witness to testify was the affiant, Detective Anousack Vongphachanh, who testified as follows:

Detective Anousack Vongphachanh  testified that he received a call from the Assistant Principal at Darby Junior High School in Fort Smith on August 27, 2009 and met and interviewed the complaining witness.  The Assistant Principal told the officer that there were no indications of a propensity for untruthfulness by the complaining witness and, after talking with the witness and assistant principal together, he scheduled another meeting with the witness and her mother at the Fort Smith Police Department.

The complaining witness informed the affiant that the Defendant had "sent her text messages from his phone asking for nude photographs of her, showing what he describes to be his penis, and telling her about a video of his son having sexual intercourse with his son's girlfriend."

Detective Anousack Vongphachanh  testified that the complaining witness stated that the number associated with the text and messages she was receiving was one she assigned to her uncle EJ and that his picture would appear on her phone when she got communication from him.

Detective Anousack Vongphachanh  testified that the complaining witness stated that she first received these messages on or about August 13, 2009 when the Defendant requested that she send nude pictures of herself and when she declined he requested that she send just a picture of her breast.

On August 20, 2009 the Defendant sent a picture of himself masturbating.  She could clearly see the defendant's face on this video and there was no doubt about who it was.  This

information was not listed in the Affidavit submitted to the judge for the search warrant although it was disclosed to the Deputy Prosecuting Attorney who prepared the affidavit.  The complaining witness also stated that she received a text stating that the defendant had a video of his minor son having sexual intercourse.

Detective Anousack Vongphachanh  further testified that the mother of the  complaining witness informed him that the complaining witness is only 14 years of age and that the uncle referred to as EJ was the defendant James H. Wilson.  She also stated that Mr. Wilson is married to her husband's sister Teresa.

Detective Anousack Vongphachanh  further verified that the phone number in question was registered to Teresa Wilson and that she lived at 7609 White Oak Mountain Road. Detective Anousack Vongphachanh  testified that when the Deputy Prosecuting Attorney prepared the affidavit that it does not state that Ms. Wilson lived at 7609 White Oak Mountain Road. The affidavit states that "We were able to confirm that the number associated the this text message checked to the wife of Mr. Wilson.  We have also been able to confirm that the Mr. Wilson and his live at 7609 White Oak Mountain Road in Sebastian County".  Detective Anousack Vongphachanh  testified that the second sentence should have read as follows:  We have also been able to confirm that the Mr. Wilson and his **Wife** live at 7609 White Oak Mountain Road in Sebastian County.  Detective Anousack Vongphachanh  testified that he gave this information to the DPA but it was not inserted into the affidavit.

Detective Anousack Vongphachanh  discussed the case with another detective, Kris Deason, who was familiar with the Defendant and had worked a case involving the defendant who was charged with sexual assault of a minor and convicted.  It also appears the Defendant has

-3-

another conviction out of Franklin County and that the Defendant is a level three registered sex offender, but neither of these facts were presented in the affidavit.

## II. Discussion

"To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir.2007), cert. denied, 552 U.S. 1104, 128 S.Ct. 875, 169 L.Ed.2d 737 (2008). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.' " *United States v. Underwood*, 364 F.3d 956, 963 (8th Cir.2004) (*quoting United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir.2002)). Judges "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir.2000). *See also U.S. v. Wallace* 550 F.3d 729, 732 (C.A.8 (Ark.),2008).

"Whether probable cause ... has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.' " *United States v. Grant*, 490 F.3d 627, 631 (8th Cir.2007), cert. denied, 552 U.S. 1281, 128 S.Ct. 1704, 170 L.Ed.2d 516 (2008) ( *quoting Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). *U.S. v. McArthur,* 573 F.3d 608, 613 (C.A.8 (Mo.),2009).

**Reliability of Complaining Witness:**

The complaining witness is not a confidential informant but a named citizen who, in this instance, is a 14 year old female who is the niece of the defendant. Her willingness to make

-4-

public disclosure of the alleged conduct is viewed differently than if she sought to disclose the information privately and is some evidence of reliability. *See United States v. Solomon*, 432 F.3d 824, 827-28 (8th Cir.2005) (*citing Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) ("a known informant ... can be held responsible if her allegations turn out to be fabricated") and *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir.2002) and *United States v. Robertson*, 39 F.3d 891, 893 (8th Cir.1994) (in-person statements allow affiant to assess informant's veracity); see also *United States v. McAtee*, 481 F.3d 1099, 1103 (8th Cir.2007) (known informant more reliable than anonymous or confidential informant).

While the complaining witness had a good reputation for veracity at her school that was not inserted into the affidavit and was not a fact known to the issuing judge.

Detective Anousack Vongphachanh  was unable to retrieve any of the text messages from the complaining witnesses and did not secure a subpoena for the phone records of the complaining witness or the number from which the calls were made. Detective Anousack Vongphachanh  testified that he did go to the phone company that serviced the complaining witness and that he did verify that there was phone traffic on the days in question and that it involved sizable files but he could not verify the number that was transmitting the data or what was transmitted. This information, however, was not placed into the affidavit.

 The police were able to determine that the phone number of the text message forwarded to the complaining witnesses was registered to the wife of the defendant and that she lived at 7609 White Oak Mountain Road in Sebastian County, Arkansas. The corroboration of even innocent, minor details can support a finding of probable cause. *Solomon*, 432 F.3d at 828 (*discussing United States v. Murphy*, 69 F.3d 237, 240 (8th Cir.1995) (affiant confirmed facts

of suspect's address and parole release));

The complaining witness asserted that the Defendant told her about a "video of his son having sexual intercourse with his son's girlfriend." The police did determine that the Defendant's step son was 14 years of age.

The reliability of the complaining witness was established on the face of the affidavit.

**Staleness:**

In the Affidavit the officer stated that "it has long been recognized by professionals dealing with persons involved with child pornography that child pornography, has enduring value to those involved in the sexual exploitation of children.  Such persons rarely, if ever dispose of their sexually explicit material.  Those material are often treated as prize possessions" and that "most frequently, these materials are kept within the privacy and security of their homes."  It seems clear that this language purports to satisfy any staleness concern.

The Government contends that the observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases. Since the materials are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to destroy them. Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence. This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time. *United States v. Lamb*, 945 F.Supp. 441, 460 (N.D.N.Y.1996) (citing, among others, *United States v. Harvey*, 2 F.3d 1318, 1322-23 (3d Cir.1993); *United States v. Koelling*, 992

-6-

F.2d 817, 823 (8th Cir.1993); *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir.1988)); *U.S. v. Riccardi*  405 F.3d 852, 861 (C.A.10 (Kan.),2005)

The Court notes that the Lamb case involved an individual using the screen names "Josh6979" and "JoMil5" who was involved in the receipt and transmission of over 100 child pornography images between August 1, 1994 and April 9, 1995.  The case involved extensive investigation and a grand jury subpoena of AOL records.  The Defendant argued, unsuccessfully,  that the information provided to the magistrate was stale because investigators did not search defendant's home until September 13, 1995 while the last known transmission of child pornography involving defendant occurred on April 5, 1995.

The Harvey case involved a two year FBI investigation and the affidavit provided that "ten times between April and July 1990 and three times in August 1991, Harvey received mailings from organizations that were either known to distribute or suspected of distributing child pornography. Four of the mailings were third-class bulk mailings."  The defense contention again was the staleness of the information because the search warrant was not obtained until October 13, 1991but the court disagreed.

In Koelling the case involved postal interception of child pornography which was ultimately delivered to the defendant's home after an anticipatory search warrant was obtained. There was nine days between the discovery of the child pornography and the search warrant and the court held that time did not cause staleness.

In the Riccardi case the defendant pretended to be a coach from the University of Missouri and would call young men, offer them a scholarship and then discuss explicit sexual acts.  After numerous complaints to the University of Missouri an investigation centered on the

defendant and a search warrant was authorized for any phones, records of phone calls and pictures of juveniles.  As a result of that search numerous Polaroid photographs of nude young men and various other documentary pieces of evidence were discovered. One piece of evidence was a receipt from Kinko's showing that pictures had be digitized. The Kinko receipt was five years old.   The police officers also noted a computer in the defendant's home and a second search warrant was subsequently obtained for the computer.  The defendant sought to suppress the search of the computer contending the information concerning digitized pictures was stale.

In the present case, according to the affidavit, on or about August 13, 2009 the defendant stated that he had a video of his 14 year old son engaged in sexual intercourse. The search warrant was signed on September 4, 2009 and, based on the above cases, that time frame would not constitute staleness.

**Probable Cause:**

A search warrant application must provide "evidence of a nexus between the contraband and the place to be searched." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir.2000).  However, the judge should read the application in a practical, common sense manner and "not in a grudging, hyper technical fashion." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir.1998); *U.S. v. Dan Thanh Nguyen,*  2006 WL 3486993, 3 (D.Minn.,2006).

The defense would argue that there is no connection between the phone number which is registered to the defendant's wife and the address listed in the search warrant.  Detective Anousack Vongphachanh testified that he verified that the Ms. Wilson was living at the above address when he spoke to the mother of the complaining witness.   The word wife does not appear in the last sentence of the 4th paragraph of the affidavit.  It would be throwing common

-8-

sense to the wind to say that the issuing judge did not understand that the last sentence in the 4th paragraph of the affidavit should be read to insert the word "wife". In reading the application in a practical, common sense manner and "not in a grudging, hyper technical fashion" the proper reading of the sentence is as follows:   We have also been able to confirm that the Mr. Wilson and his **Wife** live at 7609 White Oak Mountain Road in Sebastian County.

Whether probable cause ... has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.' " *United States v. Grant*, 490 F.3d 627, 631 (8th Cir.2007), cert. denied, 552 U.S. 1281, 128 S.Ct. 1704, 170 L.Ed.2d 516 (2008) ( *quoting Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). *U.S. v. McArthur,* 573 F.3d 608, 613 (C.A.8 (Mo.),2009).  Giving deference to the issuing judge it is clear the court saw the nexus between the phone used to transmit the data and the location of the search.

In today's technology large amounts of digital information may be stored on phones and shared interchangeably with computers and other devices. Detective Anousack Vongphachanh testified that individuals will often store their child pornography onto the computer for the enhanced viewing capabilities of the monitor verses the small screen on a phone and that they store them on home computers because of the security associated with being able to view them in a secure environment.

The police were also able to determine that the Defendant had a prior conviction for Sexual Abuse in the 1st Degree out of Sebastian County, Arkansas in case number CR 92-810. In 1992 the Arkansas Statute provided that a person commits sexual abuse in the first degree if:

(1) He engages in sexual contact with another person by forcible compulsion; or

(2) He engages in sexual contact with another person who is incapable of consent because he is physically helpless; or

(3) He engages in sexual contact with another person, not his spouse, who is a patient or resident of a hospital, nursing home, human development center, or other similar facility, and who is incapable of consent because he is mentally defective or mentally incapacitated; or

(4) Being eighteen (18) years old or older, he engages in sexual contact with a person not his spouse who is less than fourteen (14) years old; or

(5) He engages in sexual contact with a person who is less than sixteen (16) years of age and who is incapable of consent because he is mentally defective or mentally incapacitated. See Arkansas Rev. Statutes §5-14-108[1]. The officer's affidavit states that this offense "appears to have involved an underage child." While the affidavit does not state how the officer arrived at that conclusion the clerks docket entry at the time of the defendant's plea notes that "victim's father Troy Gragg approves of disposition". This entry by the clerk indicates that the victim was not old enough on her own to approve of the plea agreement. In addition the officer verified with another officer who was familiar with the case that it involved a minor.

While it would have been better had the officer included all of the pertinent information he had in the affidavit the failure to do so did not mean that there was a lack of probable cause for the issuance of the warrant. I appears that the face of the affidavit contains sufficient facts to justify probable cause for the issuance of the warrant but even if it did not the good faith

---

[1]This section, concerning sexual abuse in the first degree, was repealed by Acts 2001, No. 1738 § 10.  The section was derived from Acts 1975, No. 280, § 1808; 1985, No. 281, §4; 1985, No. 870, §3; 1985, No. 919, §4; A.S.A. 1947, §41-1808; Acts 1993, No. 935, §3; 1997, No. 831, §2.  For present law, see §5-14-124 to 127.

exception would apply in this case.

**Good Faith Exception:**

Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *U.S. v. Leon,* 468 U.S. 897 at 922.  In assessing whether the officer relied in good faith on the validity of a warrant, the court should consider the totality of the circumstances, including any information known to the officer but not included in the affidavit. *United States v. Chambers*, 987 F.2d 1331, 1335 (8th Cir.1993). The inquiry is  confined "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization," *U. S. v. Leon*, 468 U.S.897 at 922 n. 23(1984).

In this instance it is clear that the officer was justified in relying on the judicial officer. The officer first of all secured the assistance of the Deputy Prosecuting Attorney who prepared the affidavit for the officer and then the officer presented it to a neutral judge.

The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid. Id. at 923, 104 S.Ct. 3405

(citations and quotations omitted); *see United States v. Puckett*, 466 F.3d 626, 630 (8th Cir.2006).

The defendant contends that the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and that the judge "wholly abandoned his judicial role" in issuing the warrant.

"Probable cause means a fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *See United States v. Tellez*, 217 F.3d 547 (8th Cir.2000) (quoting *United States v. Horn*, 187 F.3d 781 (8th Cir.1999) (internal quotation marks omitted)).  *U.S. v. Johnson,* 219 F.3d 790, 791 (C.A.8 (Neb.),2000).

With the transmission of lewd pictures, the solicitation of a minor relative to pose nude, the representation that the defendant possessed video of his minor son engaging in sexual intercourse and the Defendant's past criminal behavior coupled with the propensity for individuals to store child pornography in a safe area, such as a home computer, the court does not believe that the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or that the judge wholly abandoned his judicial role.

### III.  Conclusion

I recommend that the Motion to Suppress be **DENIED** for the reasons stated above. The parties have **fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

-12-

**reminded that objections must be both timely and specific to trigger de novo review by the district court**.

IT IS SO ORDERED July 7, 2010.


/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-13-